[S.F. No. 24834. Dec. 30, 1985.]

ERIC CRANSTON, Plaintiff and Appellant, v.
CITY OF RICHMOND et al., Defendants and Respondents.

C**OUNSEL**

William H. Sortor and Carroll, Burdick & McDonough for Plaintiff and Appellant.

Malcolm Hunter, City Attorney, for Defendants and Respondents.

**O**PINION

GRODIN, J.—Appellant Eric Cranston was discharged from his job as a Richmond City Police Officer. The city personnel board sustained the discharge, and the superior court denied a petition for writ of administrative mandamus. The principal question presented by Cranston's appeal is whether a police officer may be disciplined for "conduct unbecoming an employee of the City Service" when, though previously warned about his driving habits and notified that his conduct was being closely observed, he drove his car with inoperative lights in the middle of the night and led fellow police officers on a wild chase over wet and slippery streets at speeds up to 95 miles per hour. Appellant contends that the rule in question is unconstitutionally vague. We conclude that the rule, viewed in the context of other rules and practices pertaining to police service, is not so vague as to preclude discipline for conduct which is so obviously improper for a police officer, and so clearly outside the scope of any substantive legal protection, as the reckless and unlawful conduct in which appellant engaged.

Appellant raises a number of other challenges both to his discharge and to the decision of the superior court. We conclude that these challenges, like appellant's constitutional challenge, are without merit. We therefore affirm the judgment of the superior court denying appellant's petition for writ of administrative mandamus.

FACTS[1]

 On April 4, 1978, at approximately 1:30 a.m., appellant, an off-duty Richmond police officer, was driving his yellow sports car along a Richmond street. Another off-duty policeman, Officer Mackie, was in the passenger seat. It had been raining very heavily that evening and the roads were wet and slippery. The dashboard lights, running lights, taillights and horn on appellant's car were inoperative. In addition, the frame of appellant's car had been damaged in a recent accident and a mechanic had warned appellant not to drive the car at high speeds because the frame might buckle and cause an accident.

Richmond Police Officer Samuel Dudkiewicz, while on routine patrol, spotted appellant's car and noticed that the taillights were not working. Unaware that the car was being driven by a fellow police officer, Officer Dudkiewicz began to follow appellant's car with the intent of stopping it and informing the driver that the taillights were not working.

As Officer Dudkiewicz accelerated to catch up to appellant's car, appellant entered the freeway and accelerated to a high rate of speed. Officer Dudkiewicz pursued appellant's car onto the freeway and advised police communications that he was trying to catch up to the speeding vehicle.

When Officer Dudkiewicz was within nine or ten car lengths of appellant's car, he activated the patrol car's emergency red lights but did not activate the siren, believing the siren would be ineffective on the freeway. At this time, Officer Dudkiewicz clocked appellant's speed at 85 miles per hour. Instead of yielding to the police car, appellant accelerated to a speed of approximately 95 miles per hour. Officer Dudkiewicz continued to pursue the speeding car and radioed police communications that he was involved in a high speed pursuit and was traveling at about 95 miles per hour.

---

[1]The facts are taken primarily from the detailed findings of the superior court. Appellant contends the superior court erroneously failed to apply the "independent judgment" standard in reviewing the administrative record and that a number of its findings of fact are unsupported by substantial evidence. We disagree. Our own review of the record satisfies us that the superior court applied the correct standard of review and that its findings are supported by substantial evidence.

Eventually, appellant's car slowed down, exited the freeway and came to a stop. Officer Dudkiewicz pulled up behind appellant's car. As appellant and Officer Mackie got out of their car, Officer Dudkiewicz realized for the first time that he had been pursuing a fellow police officer.

Before the chase began, Acting Sergeant Pylant had seen appellant and Officer Mackie leaving a bar and had stopped to talk with them. After a brief conversation, appellant and Officer Mackie drove off in appellant's car and Officer Pylant resumed his patrol.

A few minutes later, Officer Pylant heard Officer Dudkiewicz' radio transmission indicating that he was involved in a high speed pursuit. Unaware that the car being pursued was appellant's, Officer Pylant took the nearest on-ramp to the freeway, activated both his emergency lights and siren, and advised police communications that he was joining in the chase. As he accelerated to approximately 90 or 95 miles per hour, Officer Pylant began to lose control of his vehicle on the wet pavement. He regained control, slowed to about 65 miles per hour, and continued the pursuit.

When Officer Pylant caught up with appellant and Officer Dudkiewicz, they had already pulled off the freeway and were standing outside their cars, talking. Officer Pylant got out of his patrol car and joined in the conversation. He told appellant that what he had done "wasn't too cool." Appellant responded that he had thought it was Officer Pylant behind him "playing games." Appellant laughed and "kidded around," and generally treated the matter as something of a joke.

All told, at least five Richmond police officers and one California Highway Patrol car were involved in the chase. Although an internal memorandum to Police Captain Ceballos indicated there was sufficient evidence to establish a violation of Vehicle Code section 23103 (reckless driving) in addition to the obvious speeding violation, no citation was ever issued. However, Officer Pylant testified that if appellant had been a private citizen, rather than a police officer, he would have taken appellant to jail for his conduct.

An investigation of the incident was conducted by the Richmond Police Department Internal Affairs Bureau. Based on the findings of this investigation and appellant's prior history of misconduct,[2] Captain Ceballos rec-

---

[2] In his two years on the force, appellant had been officially reprimanded or "instructed" for being discourteous to a prisoner; being at fault in a traffic accident; making false statements in a police report; failing to make a police report; and hitting a citizen with a flashlight. Approximately six months before the high speed chase occurred, the chief of police had informed appellant that an improvement in his conduct, demeanor and police skills was expected in the future. Appellant was also given two weeks of retraining in an attempt to "ameliorate past deficiencies."

ommended that appellant be discharged. On August 2, 1978, appellant was terminated for "conduct unbecoming an employee of the City Service."

Appellant requested and was granted a hearing before the city's personnel board. At the hearing, appellant testified that his car never exceeded 80 miles per hour during the incident in question and that, contrary to Officer Dudkiewicz' testimony, he did not accelerate when Officer Dudkiewicz first caught up with him. Appellant admitted, however, that because his dashboard light was inoperative, he could not read his speedometer and therefore could not be sure of his speed.

Appellant further testified he first became aware that an emergency vehicle was behind him when Officer Mackie saw the flashing red lights through the rear window and informed appellant of what he saw. Rather than slowing down or moving to the right lane, appellant asked Officer Mackie to retrieve the rear view mirror from the glove compartment.[3] Using the mirror, appellant saw two emergency vehicles behind him. According to appellant's testimony, as soon as he saw the vehicles with his own eyes he slowed down, exited the freeway and came to a stop.

At the conclusion of the hearing, the personnel board determined that the charge of "conduct unbecoming an employee of the City Service" was substantiated and unanimously affirmed appellant's dismissal.

Appellant filed a petition for writ of administrative mandamus to compel his reinstatement. After making specific findings of fact and conclusions of law, the superior court denied appellant's petition.

## Discussion

### I. *Vagueness Challenge*

Appellant was terminated pursuant to Richmond City Personnel rule XII, section 2, subdivision (a) (hereafter Rule XII(2)(a)) which provides that a city employee may be discharged for "[c]onduct unbecoming an employee

---

[3]The rear view mirror had been broken off in a recent accident. Appellant had not yet had the car repaired and, in the interim, kept the rear view mirror in the glove compartment.

of the City Service."[4] Appellant argues that Rule XII(2)(a) is unconstitutionally vague.

■ It is a well-settled principle of constitutional law that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) ■ The policies underlying the proscription against vagueness are equally well established: "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109, fns. omitted [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294]; *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.* (1982) 455 U.S. 489, 498 [71 L.Ed.2d 362, 371, 102 S.Ct. 1186], rehg. den., 456 U.S. 950 [72 L.Ed.2d 476, 102 S.Ct. 2023].) In short, "[t]he root of the vagueness doctrine is a rough idea of fairness." (*Colton* v. *Kentucky* (1972) 407 U.S. 104, 110 [32 L.Ed.2d 584, 590, 92 S.Ct. 1953].)

■ Although "void-for-vagueness" challenges arise most often in the criminal context, "the prohibition against vagueness extends to administra-

---

[4]Rule XII(2) provides as follows: "The tenure of every employee holding a probationary or permanent appointment in the Classified Service shall be during good behavior and fit and efficient service, but any employee may be discharged, suspended, demoted or reduced in pay, or otherwise disciplined for any of the following reasons.

"(a) Conduct unbecoming an employee of the City Service

"(b) Incompetence or inefficiency

"(c) Insubordination

"(d) Neglect of duty

"(e) Immoral or disorderly conduct

"(f) Mental or physical incapacity

"(g) Damage to or waste of public equipment, property or supplies due to negligence or willful acts

"(h) Conviction for any criminal act involving moral turpitude

"(i) Unauthorized absence from duty

"(j) Willing violation of the provisions of Article XIII of the Charter or these Rules.

"The above reasons are indicative and not restrictive. Discharge, suspension, demotion, reduction in pay or other discipline may be based on reasons other than those specifically mentioned above. However, in all cases there must be adequate proof of the charges."

tive regulations affecting conditions of governmental employment as well as to penal statutes . . . ." (*Bence* v. *Breier* (7th Cir. 1974) 501 F.2d 1185, 1188, cert. den., 419 U.S. 1121 [42 L.Ed.2d 821, 95 S.Ct. 804]; see also *McMurtry* v. *State Board of Medical Examiners* (1960) 180 Cal.App.2d 760, 766 [4 Cal.Rptr. 910].)[5]

Initially, appellant contends that we need only determine whether Rule XII(2)(a) is unconstitutionally vague in the abstract, rather than as applied to the facts of this particular case. We disagree.

■ As the United States Supreme Court has stated: "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." (*United States* v. *Mazurie* (1975) 419 U.S. 544, 550 [42 L.Ed.2d 706, 713, 95 S.Ct. 710]; *United States* v. *Powell* (1975) 423 U.S. 87, 92 [46 L.Ed.2d 228, 233, 96 S.Ct. 316].)[6] This is so because "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." (*United States* v. *National Dairy Products Corp.* (1963) 372 U.S. 29, 32-33 [9 L.Ed.2d 561, 565-566, 83 S.Ct. 594], rehg. den., 372 U.S. 961 [10 L.Ed.2d 13, 83 S.Ct. 1011], citations omitted.) For this reason, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (*Parker* v. *Levy, supra,* 417 U.S. 733, 756 [41 L.Ed.2d 439, 458].)

The decisions of this court are wholly consistent with the Supreme Court cases cited above. ■ For instance, in *Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, we stated that, "In examining statutes challenged on

---

[5]We do not mean to suggest that the standard of vagueness applied in the context of administrative regulations is necessarily identical to the standard applied to criminal statutes. As the Supreme Court has noted: "The degree of vagueness that the Constitution tolerates— as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." (*Hoffman Estates* v. *Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at p. 498 [71 L.Ed.2d at p. 371].)

[6]Where a statute "touch[es] upon First Amendment freedoms . . . more precise statutory specificity is required, lest cautious citizens steer clear of protected conduct in order to be certain of not violating the law." (*Parker* v. *Levy* (1973) 417 U.S. 733, 775-776, fn. 5 [41 L.Ed.2d 439, 469, 95 S.Ct. 2547]; see also *Grayned* v. *City of Rockford, supra,* 408 U.S. 104; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 493 [134 Cal.Rptr. 630, 556 P.2d 1081].) Appellant does not allege that his First Amendment rights, or the First Amendment rights of others, are in any way infringed upon, chilled or even implicated by his discharge under Rule XII(2)(a). Both our analysis and our holding in this case are therefore limited by the context in which the case arises. We do not decide, and we express no view on whether a First Amendment challenge to Rule XII(2)(a), if brought in an appropriate case, might be sustained.

vagueness grounds . . . [w]e are not obliged to '. . . consider every conceivable situation which might arise under the language of the statute . . .,' so long as that language may be given '. . . a reasonable and practical construction in accordance with the probable intent of the Legislature' *and encompassing the conduct of the defendants. Thus plaintiffs cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds.*" (*Id.,* at p. 492, citations omitted, italics added; see also *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305].)[7]

■ It is therefore clear that in judging the constitutionality of Rule XII(2)(a) we must determine not whether the rule is vague in the abstract but, rather, whether it is vague as applied to this appellant's conduct in light of the specific facts of this particular case. Appellant contends, however, that even if a court must ordinarily consider a vagueness challenge in light of the facts in a particular case, it is impossible to determine whether the standard embodied in Rule XII(2)(a) is too vague as applied to the facts of this case because Rule XII(2)(a) is so patently vague and so wholly devoid of objective meaning that it provides no standard *at all.* In essence, appellant argues that we cannot determine whether his conduct is clearly proscribed "hard core" conduct (*Broadrick* v. *Oklahoma* (1973) 413 U.S. 601, 608 [37 L.Ed.2d 830, 837-838, 93 S.Ct. 2908]) because Rule XII(2)(a) is so vague it "has no core." (*Smith* v. *Goguen* (1974) 415 U.S. 566, 578 [39 L.Ed.2d 605, 615, 94 S.Ct. 1242], italics omitted.)

■ We disagree with appellant that Rule XII(2)(a) provides no standard at all. It is true that, considered in isolation, the term "'unbecoming' has no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned." (*California School Employees Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150, 156 [124 Cal.Rptr. 830]; see also *Bence* v. *Breier, supra,* 501 F.2d 1185, 1190.) However, Rule XII(2)(a) does not exist, and we do not apply it, in isolation. A number of California cases have held that where the language of a statute fails to provide an objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the statute applies.

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], a public school teacher challenged the con-

---

[7]Appellant's reliance on *People* v. *Stevenson* (1962) 58 Cal.2d 794, 798 [26 Cal.Rptr. 297, 376 P.2d 297], and *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], is misplaced. Neither case involved a challenge on vagueness grounds, nor did the court in either case address the propriety of challenging a statute as vague in the abstract rather than as applied to the facts of a particular case.

stitutionality of former Education Code section 13202 which empowered the State Board of Education to revoke a teacher's teaching certificate for "immoral or unprofessional conduct" and conduct "involving moral turpitude." We held that, although "terms such as 'immoral,' 'unprofessional,' and 'moral turpitude' constitute only lingual abstractions" when considered in isolation, these terms are nonetheless sufficiently specific when "applied to a specific occupation and given content by reference to fitness for the performance of that vocation." (*Id.*, at p. 239.) Having construed the general terms in section 13202 to refer only to conduct which indicates an unfitness to teach, we held that "[t]his construction gives section 13202 the required specificity. Teachers, particularly in the light of their professional expertise, will normally be able to determine what kind of conduct indicates unfitness to teach." (*Id.*, at p. 233.)

*Perea* v. *Fales* (1974) 39 Cal.App.3d 939 [114 Cal.Rptr. 808], involved facts very similar to those presented by this case. In *Perea* a police officer was suspended for driving 50 miles per hour in a residential neighborhood while off duty, on the ground that his conduct constituted "conduct unbecoming an officer of the Redwood City Police Department." Relying on *Morrison,* the court held: "[T]he regulations applied to appellant to justify his suspension must not be so vague as to give no guidance as to what conduct is permitted and what is prohibited. The expression 'conduct unbecoming an officer' fails, on its face, to provide a standard. However, the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards; it may be that police officers 'will normally be able to determine what kind of conduct indicates unfitness' to work in law enforcement." (*Id.*, at p. 942, citations omitted.)

In *Hand* v. *Board of Examiners, supra,* 66 Cal.App.3d 605, the appellant was a veterinarian whose license had been suspended for "[c]onduct reflecting unfavorably on the profession of veterinary medicine." (Bus. & Prof. Code, § 4882, subd. (k).) Rejecting the appellant's vagueness challenge, the court stated: "[T]he phrase 'conduct reflecting unfavorably on the profession of veterinary medicine' fails on its face to provide a standard by which conduct can be uniformly judged. However, as in *Morrison* and *Perea,* the required specificity is provided by common knowledge of members of the particular vocation, veterinary medicine." (*Id.*, at p. 622.)

Appellant argues that *Morrison, Perea* and *Hand* are distinguishable from the instant case because the standards involved in those cases expressly applied only to a specific vocation or profession whereas Rule XII(2)(a) applies generally to *all* city employees. Appellant cites two Court of Appeal decisions to support his argument that this distinction is controlling.

In *California School Employees Assn.* v. *Foothill Community College Dist.*, *supra,* 52 Cal.App.3d 150, appellant Durst was discharged from her job as a public information officer for "conduct unbecoming an employee in public service." Durst had distributed to other employees copies of a disciplinary letter received by Durst's supervisor reprimanding the supervisor for his rude and abusive conduct toward Durst. In holding the standard "conduct unbecoming an employee in public service" unconstitutionally vague, the court stated: "The district argues that here, as in *Perea,* and other authorities cited, the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards. This contention, however, is without merit in the instant case since the *category of employees* in public service is *far too broad* to provide any particular guidelines." (*Id.,* at pp. 154-155, original italics.)

Similarly, in *Jabola* v. *Pasadena Redevelopment Agency* (1981) 125 Cal.App.3d 931 [178 Cal.Rptr. 452], an accountant who was terminated for "conduct unbecoming an employee" of the agency argued that his termination was constitutionally invalid. The court agreed, holding: "That ground is constitutionally inadequate to sustain a discharge, being too vague to form the basis for action against an employee." (*Id.,* at p. 935.) After quoting at length from *Foothill,* the court stated: "The cases relied on by the agency here sustained a somewhat similar ground on the basis that, in those cases, the regulation applied to employees within a specialized professional or semiprofessional group, having, within that group, recognized standards of professional conduct. Here the regulation covers *all* employees of the agency; it sets forth no basis by which an employee may know what 'conduct' the agency may treat as 'unbecoming.' " (*Id.,* at pp. 935-936, original italics.)

*Foothill* and *Jabola* are distinguishable from the instant case both in terms of the nature of the conduct for which the employee was discharged and the relationship of that conduct to the type of employment involved. Appellant, a police officer who in the course of his employment had issued over 1,100 traffic citations, was discharged in part for his reckless and unlawful conduct in leading fellow officers on a high speed chase. In contrast Durst, the discharged employee in *Foothill,* was a news writer who was discharged for distributing copies of a letter, a copy of which she had received from one of her superiors without request and without notice that she was to consider the letter confidential. The court in *Foothill* specifically distinguished Durst's conduct from that involved in *Orlandi* v. *State Personnel Bd.* (1968) 263 Cal.App.2d 32 [69 Cal.Rptr. 177], in which a police officer was discharged for "fixing" a ticket received by a business associate (52 Cal.App.3d at p. 155). Moreover, Durst's conduct had obvious First

Amendment implications thus requiring "[g]reater precision of statutory language." (*Bowland* v. *Municipal Court, supra,* 18 Cal.3d at p. 493.)[8]

In *Jabola* an accountant was terminated for accepting a raise without notifying his superiors that the paperwork necessary to process the raise had not been completed. Again, both the nature of the employee's conduct and its relationship to the type of employment involved are clearly distinguishable from the facts of this case.

Notwithstanding these factual distinctions, however, it seems clear the decisions in *Foothill* and *Jabola* were based in large part on the fact that the regulations at issue, like Rule XII(2)(a), referred to employees generally rather than to a specific profession or vocation. To the extent this was the rationale for the holdings in *Foothill* and *Jabola,* they would appear to be inconsistent with a line of cases which have upheld the constitutionality of similar regulations.[9]

In any event, we need not determine the precise rationale of the holdings in *Foothill* and *Jabola,* nor whether these holdings conflict with other reported cases. We believe Rule XII(2)(a) is subject to a " 'reasonable and practical construction in accordance with the probable intent of the Legislature' " (*Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, 492) which

---

[8]Indeed, the court in *Foothill* held that Durst's conduct was protected by the First Amendment and that her First Amendment interests outweighed the school district's interest in discouraging "unbecoming" conduct. (52 Cal.App.3d at p. 157.)

[9]Government Code section 19572, subdivision (t), provides that an employee may be disciplined for "failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment." Although section 19572, subdivision (t) applies generally to *all* employees, its constitutionality has been upheld against vagueness challenges in a number of cases. (See, e.g., *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 511-513 [102 Cal.Rptr. 758, 498 P.2d 1006] [referee employed by Division of Industrial Accidents suspended for seeking special treatment for friend]; *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 720-721 [85 Cal.Rptr. 762] [general auditor employed by State Department of Justice dismissed for lying on application for liquor licenses]; *Orlandi* v. *State Personnel Bd., supra,* 263 Cal.App.2d 32 [police officer discharged for "fixing" ticket for a business associate].)

Significantly, the court in *Foothill* distinguished *Orlandi* and *Gee* on the ground that "the regulation [in those cases] pertained to a particular vocation, police officers" (52 Cal.App.2d at p. 155). However, Government Code section 19572, subdivision (t), the regulation at issue in *Orlandi* and *Gee,* does *not* pertain only to police officers but, rather, to all government employees. This further suggests the decision in *Foothill* may have been based on the character of the employment to which the regulation was *applied* rather than merely on the fact that the regulation itself did not *refer* to a specific vocation.

In *Vadnais* v. *Dept. of Motor Vehicles* (1935) 3 Cal.App.2d 562 [40 P.2d 559], a police officer who had unlawfully solicited business for an attorney was disciplined under section 14 of the Civil Service Act of 1929, which provided that a civil service employee could be disciplined "for any other failure of good behavior or any other act or acts which are incompatible with or inimical to the public service." The court in *Vadnais* rejected the police officer's argument that this statute was unconstitutionally vague.

takes it outside the scope of the holdings in *Foothill* and *Jabola* and brings it squarely within the holdings of *Morrison, Perea* and *Hand.*[10]

In *Morrison,* we noted that the proscription against "immoral" and "unprofessional" conduct appears in a great number of legislative enactments relating to a wide variety of occupations and professions. "Surely," we concluded, "the Legislature did not intend that identical standards of probity should apply to more than half a million professionals and government employees in widely varying fields without regard to their differing duties, responsibilities, and degree of contact with the public." (1 Cal.3d at p. 228, fns. omitted.) We think it similarly unlikely that the City of Richmond, in enacting Rule XII(2)(a), intended to impose upon all city employees an identical standard of "becoming" conduct. Rather, we think the city intended that the meaning of "conduct unbecoming an employee of the City Service" would "depend upon, and thus relate to, the occupation involved" in a particular case (*Morrison, supra,* 1 Cal.3d at p. 227).

Thus, in applying Rule XII(2)(a) to appellant, we construe the proscription against "conduct unbecoming an employee of the City Service" as if it read "conduct unbecoming a city police officer."[11] Furthermore, in accordance with our holding in *Morrison,* we construe "conduct unbecoming" a city police officer to refer only to conduct which indicates a *lack of fitness* to perform the functions of a police officer (*Morrison, supra,* 1 Cal.3d at p. 233; *Perea, supra,* 39 Cal.App.3d at p. 942).

Thus construed, Rule XII(2)(a) provides a sufficiently specific standard against which the conduct of a police officer in a particular case can be judged. Police officers, like teachers and veterinarians, will normally be able to determine what kind of conduct indicates unfitness to perform the functions of a police officer. Contrary to appellant's contention, we therefore conclude that Rule XII(2)(a) does indeed have a "core."[12] The question

---

[10]However, to the extent the holdings in *Foothill* and *Jabola* can be interpreted as inconsistent with our holding in this case, they are disapproved.

[11]In a similar vein, the Court of Appeal in *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 194 [107 Cal.Rptr. 852], held that "in order to save Government Code section 19572, subdivision (t) [discussed *ante* at fn. 9] from being unconstitutionally vague it must be applied to appellant *in light of the type of employment he was engaged in . . . .*" (Italics added.)

[12]In *Morrison,* having construed Education Code section 13202 to refer only to conduct which indicates an unfitness to teach, and further having concluded that teachers will normally be able to determine what kind of conduct indicates such unfitness, we added: "As thus construed the statute is not unconstitutional on its face. This construction does not mean that the statute will always be constitutional as applied. There may be borderline conduct which would justify a finding of unfitness to teach but about which a teacher would not have a sufficiently definite warning as to the possibility of suspension or revocation" (1 Cal.3d at p. 233, fn. 36). This same qualification applies to our holding that Rule XII(2)(a) provides a sufficiently specific standard against which to judge the conduct of police officers.

remains whether appellant's conduct so clearly falls within the proscription of Rule XII(2)(a) that the rule's application to appellant is constitutionally valid.

Appellant led five fellow police officers and one California Highway Patrol car on a high speed chase late at night, over wet and slippery streets, in a car that was mechanically (and, as far as he knew, structurally) unsound. His conduct was not only reckless but clearly violated the very laws which, as a traffic officer, it was his job to enforce.

The superior court found that appellant's conduct "endangered his life, the life of his passenger, and the lives of the pursuing officers, showed carelessness and poor judgment, [and] demonstrated a blatant disregard of the law and of the responsibilities of a peace officer." There can be no doubt that appellant's unlawful behavior constituted "hard core" conduct clearly proscribed by Rule XII(2)(a). Indeed, his was the kind of conduct "which any reasonable [police officer] must know would be cause for discipline or dismissal from employment *whether described in a rule or not.*" ■ ■ ■ ■ ■ (*Herzburn* v. *Milwaukee County* (7th Cir. 1974) 504 F.2d 1189, 1193, italics added; *Aiello* v. *City of Wilmington, Delaware* (3d Cir. 1980) 623 F.2d 845, 851; see also *Allen* v. *City of Greensboro, North Carolina* (4th Cir. 1971) 452 F.2d 489, 491.)[13]

---

[13]The analysis we follow here is consistent with the principles commonly applied by labor arbitrators in determining the propriety of discipline under the standard of "just cause." "A fundamental component of the just-cause standard is that employees must be told what kind of conduct will lead to discipline—especially if the penalty is to be discharge. An employee can hardly be expected to abide by 'the rules of the game' if the employer has not communicated those rules, and it is unrealistic to think that, after the fact, an arbitrator will uphold a penalty for conduct that an employee did not know was prohibited." (Koven & Smith, Just Cause: The Seven Tests (1985) p. 25.) Arbitrators recognize, however, that " 'certain egregious conduct, such as stealing, intoxication while at work, or fighting with supervisors or coworkers, is so evidently a violation of commonly accepted notions of work conduct that it will be presumed that the employee is on notice that such conduct is unacceptable and that he can be penalized for violating such rules.' " (*Id.,* at pp. 23-24; see also Elkouri & Elkouri, How Arbitration Works (1973) pp. 641-642.)

Ordinarily, an employee's conduct off the job cannot be made the subject of discipline absent a specific rule, since "as a matter of 'common law' applicable to industrial relations, what an employee does on his own time is not a subject of regulation by the employer." (Lamb Glass Co., 32 LA 420, 423 (Dworkin, 1959).) The situation is otherwise, however, with respect to a police officer's off-duty violation of law which he is expected to enforce against the public during his working hours. "The public has a right to expect police officers to obey the laws whether they are on duty or off duty. . . . When police officers violate the laws which they were hired to enforce they do so at their own peril." (Arbitrator Robert D. Kaplan in Metropolitan Police Dept. (Fraternal Order of Police) 84 LA 105, 108 (Jan. 1, 1985) (drunk driving).)

Appellant argues that even if he had notice that his conduct might subject him to *discipline,* he had no way of knowing that such conduct, alone, would be cause for *dismissal.* We need not decide whether appellant had adequate notice that his conduct on April 4 *alone* was cause for dismissal as appellant was not discharged for the April 4 incident alone, but rather for that incident in conjunction with his history of misconduct.

Moreover, Rule XII(2)(a) was not the only notice appellant had that his conduct would be cause for discipline. The Richmond Police Department Manual contains a number of provisions concerning the proper conduct of police officers.[14] For instance, section 1.01.100 provides that "an individual's value to this department will be gauged not only by the way he complies with instructions contained in this manual, but by his demonstration of good judgment, integrity and loyalty to the department and community which is served." Section 3.00.200 of the manual provides that, "[t]he conduct and integrity of the members of the Richmond Police Department shall be governed [in part] by the principles set forth in the Law Enforcement Code of Ethics . . . ." Under the code of ethics, each officer affirms that "I recognize the badge of my office as a symbol of public faith, and I accept it as public trust to be held *so long as I am true to the ethics of the police service*" (italics added). Among the ethical precepts to which each officer must remain true is the command to be "exemplary in obeying the laws of the land and the regulations of [the] department." And, lest there be any doubt that an officer may be disciplined for his off-duty conduct, the manual states that "[s]worn Police Officers are considered to be on duty 24 hours a day, seven days a week . . . . [¶] Their conduct and activities are closely scrutinized by many, not only in the direct performance of their jobs, but in their personal conduct away from the job."

In addition to the guidelines provided by rule XII and the police manual, appellant received personal notice that he could be disciplined for the type of conduct he engaged in on the night of April 4. Following an automobile accident which was caused, in part, by appellant's failure to obey the speed limit and take necessary precautions, appellant was instructed by his superior officer to "evaluate his own driving habits in regards to acceptable department standards and how they affect the safety of the public, fellow officers [and] himself . . . ." Furthermore, approximately six months before the high speed chase incident, appellant received a letter from the chief of police which stated: "This letter is notification that you are being closely observed . . . and that I expect an improvement in your conduct, your demeanor, and your police skills. I am certain that you will make every effort to cooperate and attempt to improve yourself. [¶] Anything else than that will lead me to believe that your field of interest lies elsewhere than in law enforcement for the City of Richmond."

Under these circumstances, appellant had more than ample notice that his conduct on the night of April 4 was "conduct unbecoming" a police officer

---

[14]Appellant argues that the Richmond Police Department Manual was improperly admitted into evidence by the superior court and therefore is not properly before us on this appeal. As we shall explain (*post,* at p. 773), appellant's contention is without merit.

and, consequently, grounds for dismissal. We therefore hold that Rule XII(2)(a), as applied to appellant, is not unconstitutionally vague.[15]

We emphasize, however, that our holding is a narrow one. There may well be situations in which the admittedly uncertain language of Rule XII(2)(a) will fail to provide sufficiently definite notice to a police officer or other city employee that his or her conduct may be cause for discipline.[16] We hold only that Rule XII(2)(a) is not unconstitutionally vague as applied to a police officer who has engaged in the sort of patently unlawful and reckless conduct engaged in by appellant.

II. *Excessive Punishment*

Appellant next argues that "the sanction of dismissal for a traffic infraction is clearly excessive." To support his argument, appellant notes that another Richmond police officer received only a two-week suspension for striking a handcuffed prisoner and that one of appellant's superiors recommended that appellant receive a three-day suspension for his conduct on April 4.

It is disingenuous, at best, to characterize appellant's conduct as a mere "traffic infraction" and, in any event, as we have already explained appellant's discharge was not based solely on the April 4 incident but also on his history of misconduct. The fact that one of appellant's superiors disagreed with the recommendation of Captain Ceballos is of limited relevance,[17] and surely it is of no relevance that another officer received only a suspension for a single incident involving conduct wholly dissimilar from and unrelated to that for which appellant was discharged.

"It is settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its discretion will not be disturbed unless there has been an abuse of discretion." (*Blake* v. *State Personnel Bd.* (1972) 25 Cal.App.3d 541, 553 [102 Cal.Rptr. 50]; see also *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d

---

[15]Contrary to appellant's assertion, it is clear that the requisite "nexus" exists between appellant's conduct and his fitness to perform the duties of a police officer (*Morrison, supra,* 1 Cal.3d at pp. 235-238; *Perea, supra,* 39 Cal.App.3d 939, 942). Carelessness, poor judgment, disregard for the safety of others and, most importantly, a "blatant disregard" of the very laws which it was appellant's duty to enforce, clearly reflect upon appellant's fitness to perform the duties of a police officer. (See, e.g., *Hooks* v. *State Personnel Bd.* (1980) 111 Cal.App.3d 572, 577 [168 Cal.Rptr. 822]; *Vielehr* v. *State Personnel Bd., supra,* 32 Cal.App.3d at p. 194.)

[16]See *ante,* at page 769, footnote 12.

[17]Significantly, this superior officer did not testify on appellant's behalf at the hearing before the personnel board.

395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].) Appellant has failed to demonstrate that the personnel board abused its discretion in sustaining appellant's discharge.

III. *Other Issues*

■ In its memorandum of points and authorities in opposition to appellant's petition for writ of administrative mandamus, respondents included as exhibit G certain excerpts from the Richmond Police Department Manual. Appellant moved to strike exhibit G on the grounds that it was not part of the administrative record. The motion was denied. Appellant now argues that the superior court abused its discretion in failing to strike exhibit G.

Under Code of Civil Procedure section 1094.5, evidence which is not part of the administrative record can be introduced only if that evidence could not with reasonable diligence have been presented at the administrative hearing, or was improperly excluded at that hearing. (Code Civ. Proc., § 1094.5, subd. (e); *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 771-772 [122 Cal.Rptr. 543, 537 P.2d 375].) Appellant contends that since the manual was available to respondents at the time of the administrative hearing, the evidence could with reasonable diligence have been produced at the hearing and, therefore, the requirements of section 1094.5, subdivision (e) were not met. This argument is without merit.

Respondents sought to introduce portions of the manual pertaining to the conduct expected of police officers because these provisions were relevant to the issue of whether Rule XII(2)(a) is unconstitutionally vague. Appellant did not challenge the constitutionality of Rule XII(2)(a) in the hearing before the personnel board; the issue was first raised in appellant's petition for writ of administrative mandamus. Until appellant raised the issue in his petition for mandamus, respondents had no reason to anticipate that such a challenge would be made and, consequently, had no reason to offer into evidence those portions of the manual which were relevant to appellant's constitutional challenge. Under these circumstances, the superior court did not abuse its discretion under Code of Civil Procedure section 1094.5, subdivision (e) by denying appellant's motion to strike exhibit G.

■ Appellant next contends that his discharge violated Labor Code section 432.7. Section 432.7, subdivision (a), provides in part that, "No employer whether a public agency or private individual . . . [shall] utilize, as a factor in determining any condition of employment including . . . termination . . . any record of arrest or detention which did not result in conviction . . . ." Appellant argues that he was "detained" by Officers Dud-

kiewicz and Pylant and that his discharge was based on the "record" of this "detention."

Contrary to appellant's assertion, his discharge was not based on any "record" of detention within the meaning of Labor Code section 432.7. Rather, appellant's discharge was based on the city's independent investigation of the facts surrounding the April 4 incident. The fact that this incident happened to involve a "detention" (if such it was) by police officers does not bring the city's subsequent decision to terminate appellant within the proscription of Labor Code section 432.7.

Finally, appellant argues that he was denied representation during an investigatory interview conducted by the police department's internal affairs bureau. Under Government Code section 3303, subdivision (h), whenever a police officer is under investigation and subjected to interrogation by the department, he has "the right to be represented by a representative of his choice who may be present at all times during such interrogation." In addition, in *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 566-568 [150 Cal.Rptr. 129, 586 P.2d 162], we suggested that under Government Code section 3500 et seq. (the Meyers-Milias-Brown Act), local government employees are entitled to the presence of a union representative during investigatory interviews of the type involved here.

It is undisputed that when appellant was questioned as part of the department's internal affairs investigation, his chosen representative was present. Appellant contends however that he was denied representation because the representative was "denied the opportunity to participate in any way in the interrogation," and "was not permitted to participate in the proceedings by asking [appellant] questions to clarify issues and get to the truth."

There may well be merit to appellant's contention that a police officer's right to representation at an investigatory interview includes the right to at least some level of participation by his chosen representative.[18] However, whatever the scope of a police officer's right to representation, appellant has failed to establish that *his* right to representation was abridged.

Appellant's claim that he was denied representation rests solely on the bare assertion that his representative was denied the opportunity to partici-

---

[18]A number of circuit court of appeals decisions have held that an employee's right, under the National Labor Relations Act, to union representation during investigatory interviews is not met simply by allowing the representative to attend the interview as a passive observer. (See *N.L.R.B.* v. *Southwestern Bell Telephone Co.* (5th Cir. 1984) 730 F.2d 166; *N. L. R. B.* v. *Texaco, Inc.* (9th Cir. 1981) 659 F.2d 124.)

pate in the interview. Appellant apparently made no factual showing and presented no evidence to the superior court in support of his claim, although he clearly had a right to do so.[19] On the silent record before us, knowing absolutely nothing about the circumstances surrounding the investigatory interview, we cannot conclude that appellant was denied his right to representation.

The judgment is affirmed.

Mosk, J., Broussard, J., Reynoso, J., Lucas, J., and Kaus, J.,* concurred.

**BIRD, C. J.**—I respectfully dissent. I would hold that Richmond City Personnel rule XII, section 2, subdivision (a) (hereafter rule XII(2)(a)) is unconstitutionally vague because it provides no ascertainable standard of conduct.

As the majority note, where the statute challenged on vagueness grounds does not involve "First Amendment freedoms," the statute is examined "in light of the facts of the case at hand." (*United States* v. *Mazurie* (1975) 419 U.S. 544, 550 [42 L.Ed.2d 706, 713, 95 S.Ct. 710]; accord *United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32-33 [9 L.Ed.2d 561, 565, 83 S.Ct. 594]; maj. opn., *ante,* at p. 763.) "In examining statutes challenged on vagueness grounds, courts have looked not merely at the hypothetical cases to which the statute has uncertain applicability, but also at the act allegedly committed by the charged defendant." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) However, it is impossible to determine whether a statute is vague as applied to the conduct at issue where the statute is so vague that it provides no standard whatsoever. Such a provision "is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' [Citation.] Such a provision simply has *no* core." (*Smith* v. *Goguen* (1974) 415 U.S. 566, 578 [39 L.Ed.2d 605, 614-615, 94 S.Ct. 1242], italics in original.) In my opinion rule XII(2)(a) is such a provision.

Rule XII(2)(a) provides that an employee of the City of Richmond can be discharged for "[c]onduct unbecoming an employee of the City Service."

---

[19]Although the personnel board refused to allow appellant to present evidence on the alleged denial of representation (apparently because it felt any such claim was more appropriately addressed to a court of law), appellant had the right to present this evidence to the superior court in support of his petition for a writ of administrative mandamus. (Code Civ. Proc., § 1094.5, subd. (e).) Appellant offers no explanation for his failure to do so.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

The majority concede that the term " 'unbecoming' has no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned." (*California School Employees Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150, 156 [124 Cal.Rptr. 830]; maj. opn., *ante,* at p. 765.) Therefore, rule XII(2)(a) is unconstitutionally vague under the rationale of *Smith* v. *Goguen, supra,* 415 U.S. at page 578 [39 L.Ed.2d at pages 614-615]. However, the majority contend that where, as here, the statute or regulation contains no ascertainable standard, "the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the statute applies." (Maj. opn., *ante,* at p. 765.)

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 229 [82 Cal.Rptr. 175, 461 P.2d 375] (hereafter *Morrison*) this court held that under former Education Code section 13202, teachers could be disciplined only for conduct indicating an unfitness to teach. In light of this construction, the court held that the statute had the requisite specificity to survive a vagueness challenge because "[t]eachers, particularly in the light of their professional expertise, will normally be able to determine what kind of conduct indicates unfitness to teach." (*Id.,* at p. 233; see also *Perea* v. *Fales* (1974) 39 Cal.App.3d 939, 942 [114 Cal.Rptr. 808] (hereafter *Perea*).)

In *Perea,* a police officer was disciplined for speeding. The court found that the term "conduct unbecoming an officer" was not unconstitutionally vague although the term "fails, on its face, to provide a standard." Relying on *Morrison,* the court in *Perea* held that "the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards; it may be that police officers 'will normally be able to determine what kind of conduct indicates unfitness' to work in law enforcement." (*Ibid.,* citation omitted.)

However, the rule developed in *Morrison* and applied in *Perea* has been applied only to statutes that refer to a specific occupation or profession. *Morrison* and *Perea* do not apply to statutes that purport to provide a standard of conduct governing a broad range of employees. (*California School Employees Assn.* v. *Foothill Community College Dist., supra,* 52 Cal.App.3d at pp. 154-155 (hereafter *Foothill*); *Jabola* v. *Pasadena Redevelopment Agency* (1981) 125 Cal.App.3d 931, 935-936 [178 Cal.Rptr. 452] (hereafter *Jabola*).)

In *Foothill,* the provision challenged on vagueness grounds was nearly identical to rule XII(2)(a). "On its face, the rule proscribes conduct that is 'unbecoming an employee in the public service.' It is obvious that any apparent limitation on the employee's conduct through the use of this quali-

fying term is illusory, for 'unbecoming' has no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned. Like beauty, its content exists only in the eye of the beholder." (*Foothill, supra,* 52 Cal.App.3d at pp. 155-156.) Because the regulation at issue in *Foothill* was applicable, by its terms, to a wide range of employees, the court refused to find that the requisite specificity was provided by reference to the standards of the particular profession. "The district argues that here, as in *Perea,* and other authorities cited, the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards. This contention, however, is without merit in the instant case since the *category of employees* in public service is *far too broad* to provide any particular guidelines." (*Id.,* at pp. 154-155, italics in original.)

In *Jabola,* the language at issue was similar to that contained in rule XII(2)(a). Relying on *Foothill,* the court in *Jabola* found that a charge of " 'conduct unbecoming an employee of the' agency" was unconstitutionally vague. (*Jabola, supra,* 125 Cal.App.3d at pp. 934-935.) The court refused to look to the profession of the disciplined employee to render the charge sufficiently specific. "The cases relied on by the agency here sustained a somewhat similar [rule] on the basis that, in those cases, the regulation applied to employees within a specialized professional or semiprofessional group, having, within that group, recognized standards of professional conduct. Here the regulation covers *all* employees of the agency; it sets forth no basis by which an employee may know what 'conduct' the agency may treat as 'unbecoming.' " (*Id.,* at pp. 935-936, italics in original; see also *Hand* v. *Board of Examiners* (1977) 66 Cal.App.3d 605, 622-623 [136 Cal.Rptr. 187].)

I agree with the rationale of *Foothill* and *Jabola* and would apply the reasoning of those decisions to the facts of this case. It is well established that the term "conduct unbecoming" has no "inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned" (*Foothill, supra,* 52 Cal.App.3d at p. 156; *Jabola, supra,* 125 Cal.App.3d at p. 935; accord *Perea, supra,* 39 Cal.App.3d at p. 942; maj. opn., *ante,* at p. 765). The term is not rendered any more specific by addition of the words "an employee of the City Service."

There is no recognized standard of professional conduct for city employees as a whole. The "common knowledge" of the members of the city service "sets forth no basis by which an employee may know what 'conduct' the agency may treat as 'unbecoming.' " (*Jabola, supra,* 125 Cal.App.3d at p. 936.) Therefore, rule XII(2)(a) is not analogous to the rule at issue in *Perea,* which permitted discipline for " 'conduct unbecoming an officer of

the Redwood City Police Department.'" (39 Cal.App.3d at p. 941.) The limitation of the standard in that case to conduct unbecoming *a police officer* provided, in light of the "common knowledge of members of the particular vocation," "fair warning of which conduct is prohibited and which permitted." (*Id.*, at p. 942.)

The majority find that rule XII(2)(a) "provides a sufficiently specific standard" despite its failure to refer to a group of employees as to whom there exists "recognized standards of professional conduct." (*Jabola, supra,* 125 Cal.App.3d at p. 935; see maj. opn., *ante,* at p. 769.) They dismiss the rationale of *Foothill* and *Jabola* by construing "conduct unbecoming an employee of the City Service" to read "conduct unbecoming a city police officer." (Maj. opn., *ante,* at p. 769.) I do not believe that rule XII(2)(a) can be saved by such a construction.

In support of their construction of rule XII(2)(a), the majority cite *Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479 (hereafter *Bowland*), which held that statutory language challenged on vagueness grounds can be examined in light of the facts at hand "so long as that language may be given '. . . a reasonable and practical construction in accordance with the probable intent of the Legislature' and encompassing the conduct of the defendants." (*Id.,* at p. 492, citing *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345].) Relying on *Morrison,* the majority speculate that "the city intended that the meaning of 'conduct unbecoming an employee of the City Service' would 'depend upon and thus relate to, the occupation involved' in a particular case." (Maj. opn., *ante,* at p. 769, citing *Morrison, supra,* 1 Cal.3d at p. 227.) However, the court in *Morrison* merely stated that broad language, which was used in statutes governing various professions, was intended to be read in light of the specific vocational group to which the particular statute applied. (*Id.,* at pp. 227-228.) *Morrison* does not support the majority's contention that the City of Richmond, in prescribing a single standard of conduct for a broad class of employees, intended instead to prescribe a separate standard for each vocational group within that class. It is equally likely that the City of Richmond intended rule XII(2)(a) to apply to those acts that it deemed "unbecoming" to all city employees regardless of occupation.

In determining whether a statute is unconstitutionally vague, *Bowland* would permit this court to devise a "practical" and "reasonable" construction of the statutory language consistent with the legislative intent. However, one purpose of requiring precision in administrative regulations of this sort is to give the employee notice of what conduct constitutes grounds for discipline. (See *United States* v. *National Dairy Corp., supra,* 372 U.S. at p. 33 [9 L.Ed.2d 561, 566, 83 S.Ct. 594]; *Morrison, supra,* 1 Cal.3d at

p. 231.) Therefore, I would hold that unless the judicial construction is readily apparent from the language of the challenged statute, the statute is unconstitutionally vague because the employee may not be charged with notice that the conduct at issue was prohibited. As this court explained in *Bowland,* "[n]o important constitutionally protected right is endangered . . . by the imprecision inhering in this statute, . . . so long as an accused can reasonably be held to understand *by the terms of the statute* that his conduct is prohibited." (*Bowland, supra,* 18 Cal.3d at p. 493, italics added; cf. *Smith* v. *Goguen, supra,* 415 U.S. at p. 580 [39 L.Ed.2d at p. 616] [which notes "the problems presented by an appellate court's limiting construction in the very case in which a defendant has been tried under a previously unnarrowed statute"].)

As the majority concede, the plain language of rule XII(2)(a) provided no ascertainable objective standard by which an employee could determine whether his conduct would subject him to discipline. (Maj. opn., *ante,* at p. 765.) However, the majority find the requisite specificity by construing rule XII(2)(a) to refer to "conduct unbecoming a city police officer," instead of "conduct unbecoming an employee of the City Service."

I cannot concur in the majority's construction of rule XII(2)(a). It is not readily apparent from the plain language of the rule that the unbecoming conduct standard does not apply to city employees as a whole. Accordingly, I would find that rule XII(2)(a) contained no ascertainable standard and could not, therefore, provide notice to appellant that his conduct would be deemed "unbecoming" by the City of Richmond.

I would reverse the judgment of the trial court on the ground that rule XII(2)(a) is unconstitutionally vague.