Filed 8/19/14  Dancler v. City of Los Angeles Civil Service Commission CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN DANCLER, | B250164 |
| Petitioner and Appellant, | (Los Angeles County Super. Ct. No. BS138826) |
| v. | |
| CITY OF LOS ANGELES CIVIL SERVICE COMMISSION, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

DePasquale & Cole, Paul R. DePasquale and Russell J. Cole for Petitioner and Appellant.

Michael N. Feuer, City Attorney, Zna Portlock Houston, Senior Assistant City Attorney, and Jennifer M. Handzlik, Deputy City Attorney, for Respondent.

John Dancler appeals from a decision of the trial court denying his petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Appellant, a former traffic officer for the City of Los Angeles Department of Transportation (Department), challenges a decision by respondent, the City of Los Angeles Civil Service Commission, sustaining his termination from employment. Appellant contends that he did not engage in conduct unbecoming a traffic officer and that his discharge was an excessive penalty. Appellant was discharged after a video of an adult film actress approaching and exposing herself to men on the street showed that appellant fondled her while he was on duty. We conclude that the trial court's findings are supported by substantial evidence and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Video*

Appellant was employed as a traffic officer from 1988 until his discharge in 2011. In March 2008, appellant received a call from another traffic officer, Vaughn Dorsey, requesting assistance with a number of vehicles blocking traffic. When appellant arrived, he noticed that there were a number of men in the street. He parked his car and walked over to speak to Dorsey, who warned him to lock his car doors because a woman had jumped into Dorsey's car earlier.

Kylee Reese, an adult film actor, was on the street with a film crew, making a video that involved Reese approaching men on the street, exposing herself, and having them fondle her. When appellant went to check that his car doors were locked, Reese ran up to him, asked him for a hug, and jumped into his arms, wrapping her legs around him. Reese then jumped down, pulled up her skirt, and told appellant to spank her, which he did.

2

The director making the film told Reese to show appellant her breasts. Reese encouraged appellant to touch her breasts, which he did, after declining several times. Appellant left and did not report the incident. A video of the incident was posted on an internet website.

*The Investigation*

Over three years later, on April 26, 2011, a local television reporter, Joel Grover, asked Bruce Gillman, the Director of Public Information for the Department, about a pornographic video. Gillman arranged for the video to be shown to Amir Sedadi, the Department's general manager. Grover showed Sedadi the video and interviewed him. Sedadi asked Grover for a copy of the video, but Grover instead gave him the name of the website on which the video was posted.

Sedadi asked Gillman to obtain a copy of the video, so Gillman downloaded the video from the website, which was a subscription-based adult website. The video Gillman obtained showed two traffic officers with their faces and uniform insignia obscured. Dorsey admitted he was the first officer in the video, and appellant admitted being the second. Dorsey is seen opening the door of his parking enforcement car, and Reese emerges from the car with her top pulled down to expose her breasts. Reese is seen jumping into appellant's arms, then holding her bare buttocks out for him to spank and exposing her breasts for him to touch.

Following an investigation, the Department served appellant with a notice of discharge, effective July 18, 2011. The reason given was "Misconduct on the job (and in uniform) unfavorably reflecting on City employees when you engaged in indecent acts including groping the bare breasts, spanking the bare buttocks, and being straddled by an adult video actress in public on or about March 2008."

3

An administrative disciplinary hearing was held pursuant to *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194. The hearing committee recommended that appellant be discharged, reasoning that his job enforcing parking laws was a high profile position in the public eye, requiring good judgment and integrity. The committee also noted that appellant had received other disciplinary actions during his 20-year career, including one 5-day suspension and one 15-day suspension. Appellant was discharged.

*Appeal and Writ Petition*

Appellant appealed the decision to respondent. In January 2012, an administrative hearing was conducted. In April 2012, the hearing examiner issued a report, recommending that appellant's discharge be sustained. Respondent sustained appellant's discharge and denied his subsequent demand for reinstatement.

In August 2012, appellant filed a petition for writ of administrative mandamus. After holding a hearing, the trial court entered judgment, denying the petition. Appellant filed a timely notice of appeal.

**DISCUSSION**

*Legal Principles and Trial Court Findings*

"Termination of a nonprobationary public employee substantially affects that employee's fundamental vested right in employment. [Citations.] Accordingly, when ruling on a petition for a writ of administrative mandamus seeking review of procedures that resulted in the employee's termination, the trial court examines the administrative record and exercises its independent judgment to determine if the weight of the evidence supports the findings upon which the

4

agency's discipline is based or if errors of law were committed by the administrative tribunal. [Citations.]" (*Bautista v. County of Los Angeles* (2010) 190 Cal.App.4th 869, 874-875.)

"The independent judgment test required the trial court to not only examine the administrative record for errors of law, but also exercise its independent judgment upon the evidence in a limited trial de novo. [Citation.] The trial court was permitted to draw its own reasonable inferences from the evidence and make its own credibility determinations. [Citation.] At the same time, it had to afford a strong presumption of correctness to the administrative findings and require the challenging party to demonstrate that such findings were contrary to the weight of the evidence. [Citation.]" (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 407 (*Candari*).)

"When a trial court has applied an independent judgment standard of review of an administrative decision, 'an appellate court need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.]" (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 926, fn. 7 (*Saraswati*).) "We resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citation.] 'Where the evidence supports more than one reasonable inference, we are not at liberty to substitute our deductions for those of the trial court.' [Citation.]" (*Candari*, *supra*, 193 Cal.App.4th at p. 408.)

"Judicial review of an agency's assessment of a penalty is limited, and the agency's determination will not be disturbed in mandamus proceedings unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency. [Citation.] 'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of

5

punishment imposed. [Citations.]' [Citation.] If reasonable minds may differ with regard to the propriety of the disciplinary action, no abuse of discretion has occurred. [Citation.] An appellate court conducts a de novo review of the trial court's determination of the penalty assessed, giving no deference to the trial court's determination. [Citation.]" (*Flippin v. Los Angeles City Bd. of Civil Service Commissioners* (2007) 148 Cal.App.4th 272, 279 (*Flippin*).)

At the hearing on appellant's writ petition, the trial court acknowledged that the standard of "conduct unbecoming" an officer was vague, in particular because appellant was a traffic officer, not a sworn police officer. Nonetheless, the court found that appellant's conduct was unbecoming, stating that "a traffic officer's common understanding would be don't place your hand on a woman's breast in public when you're wearing a uniform." Appellant's counsel asked, "Even if she asked you to many times?" The court replied, "I would say yes."

As to the question of whether the penalty was excessive, the court reasoned that the factors in appellant's favor were that he was taken by surprise, the misconduct was "highly unusual," and he had not been trained to deal with such a situation. On the other hand, the court reasoned that appellant's job was in the public eye and that he wore a uniform and drove a City vehicle, thus representing the City while working. The court further reasoned that "embarrassment to the City is a legitimate factor in evaluating employee discipline," and that appellant's work history was not perfect. The court concluded that, although a less severe penalty might have been appropriate, it was not an abuse of discretion for the Department to discharge appellant.

6

*Conduct Unbecoming a Traffic Officer*

Appellant contends that the evidence does not support the court's finding that he engaged in conduct unbecoming a traffic officer. We disagree. The video shows appellant, wearing his Department uniform, slapping Reese's bare buttocks twice and fondling her breast. We have no trouble concluding that the trial court's finding that appellant engaged in conduct unbecoming a traffic officer is supported by substantial evidence.

Appellant offers numerous justifications for his conduct, arguing that there was no rule against hugging someone while on duty, that it would have been bad for him to drop Reese when she wrapped her legs around him, and that he and Dorsey were the only African Americans at the scene. He further contends that traffic officers are unarmed and do not receive the type of training that police officers receive. Appellant also urges us to take into consideration the conduct of the other men seen in the video, who were encouraging Reese's behavior and ridiculing Dorsey for his reluctance to engage with her. However, none of these considerations suggests that the evidence was insufficient to support the trial court's finding that appellant's conduct – spanking a woman's bare buttocks and touching her breasts in public, while on duty and in uniform – constituted conduct unbecoming a traffic officer. Indeed, it is difficult to understand how the trial court could have reached any other conclusion.

Appellant relies on *California School Employees Assn. v. Foothill Community College Dist.* (1975) 52 Cal.App.3d 150 (*Foothill*) to argue that the standard of "conduct unbecoming a traffic officer" is impermissibly vague. He contends that the situation he encountered with Reese was unprecedented and that the standard of unbecoming conduct accordingly provided no guidance as to what

type of response would have been prohibited.  We reject appellant's position for several reasons.

First, *Foothill* was disapproved by the California Supreme Court in *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 767-769, 769, footnote 10. Second, as the trial court reasoned, any traffic officer should understand that placing his hand on a woman's breast in public while in uniform is unbecoming conduct.  This situation is similar to *Cranston*, in which the court reasoned that the appellant's conduct, leading fellow officers on a high speed pursuit late at night over wet roads in an unsafe car, "was the kind of conduct 'which any reasonable [police officer] must know would be cause for discipline or dismissal from employment *whether described in a rule or not*.'  [Citations.]"  (*Cranston*, *supra*, 40 Cal.3d at p. 770.)  As in *Cranston*, appellant's conduct was the type of conduct that any reasonable traffic officer should know would be cause for discipline or dismissal.

Appellant further argues that the incident did not indicate his unfitness to perform the duties of a traffic officer, as evidenced by his continuing in his position for three years before the incident came to light.  (See *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 229 (*Morrison*) [holding that the Board of Education could not characterize the petitioner's conduct as immoral or unprofessional and revoke his teaching certificate unless the conduct indicated he was unfit to teach].)  Appellant acknowledges that the embarrassment caused by the video is a valid concern for the Department and the City.  However, he points out that the California Supreme Court in *Morrison* expressed the view that "'[t]oday's morals may be tomorrow's ancient and absurd customs.'  [Citation.]

8

And conversely, conduct socially acceptable today may be anathema tomorrow."[1] (*Id.* at p. 226, fn. omitted.)

We disagree with appellant's contentions that Reese's conduct "exemplified real life in Southern California" and that appellant's response to her was not "obviously inappropriate." Moreover, we need not determine whether, at some time in the future appellant's conduct might be deemed acceptable conduct for a City traffic officer, although we certainly do not foresee such a day. Instead, we only review the record to determine whether the trial court's findings are supported by substantial evidence. (*Saraswati*, *supra*, 202 Cal.App.4th at p. 926, fn. 7.) As discussed above, substantial evidence supports the trial court's finding that appellant's conduct was unbecoming.

*Penalty*

Appellant also contends that the penalty of termination was excessive in light of factors such as the harm to the public service, the likelihood the conduct would be repeated and cause harm, and the circumstances surrounding the conduct. "[T]he penalty imposed by an administrative agency will not be disturbed in a mandamus proceeding absent a manifest abuse of discretion. [Citation.] 'It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown. [Citations.]' [Citation.]" (*Flippin*, *supra*, 148 Cal.App.4th at p. 283.)

The trial court correctly deferred to the agency's discretion in imposing the penalty of termination. The court reasoned that it might have been possible for the Department to "give[] [appellant] the benefit of the doubt if they were not worried

---

[1]    The conduct for which the Board of Education revoked the petitioner's teaching certificate in *Morrison* was a homosexual relationship with a fellow teacher who was married to someone else.

about public embarrassment," but that the Department did not abuse its discretion in deciding to terminate appellant. We agree.

The offense for which appellant was discharged was "[m]isconduct, on or off the job, unfavorably or seriously reflecting on the City or its employees." According to the Department's Manual of Policies and Procedures, the penalty for a first offense under this provision ranges from a one-day suspension to discharge. Respondent accordingly acted within its discretion in deciding to discharge appellant for this conduct.

The weighing of the considerations raised by appellant is not an appropriate task for the appellate court in determining the appropriate penalty. Instead, we may not disturb the agency's decision "unless there is an arbitrary, capricious or patently abusive exercise of discretion by the agency. [Citation.]" (*Flippin*, *supra*, 148 Cal.App.4th at p. 279.) Appellant has failed to show that respondent abused its discretion in imposing the penalty of termination for his conduct.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.