Filed 10/6/20  Bruno v. Office of Administrative Hearings CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CHRISTOPHER BRUNO, | C090123 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUMW20180010949) |
| v. | |
| OFFICE OF ADMINISTRATIVE HEARINGS, | |
| Defendant; | |
| SAN JOAQUIN COUNTY PUBLIC DEFENDER'S OFFICE, | |
| Real Party in Interest and Respondent. | |

Real party in interest San Joaquin County Public Defender's Office (the County) disciplined plaintiff Christopher Bruno with a 20-day suspension for violating the county's harassment-free work environment policy (the County's policy) and civil service rule 18 (Rule 18), prohibiting conduct unbecoming an employee in public service.

1

Defendant Office of Administrative Hearings found Bruno made gender-related comments to a female colleague and repeatedly touched her in an unwelcome manner. It further found the 20-day suspension appropriate discipline for these violations.

Bruno appeals arguing the allegations supporting the County's discipline were time-barred under County rules. He further argues the administrative law judge's factual findings do not constitute violations of the County's policy and Rule 18 is unconstitutionally overbroad. Bruno also contends the administrative law judge abused his discretion by declining to consider Bruno's challenge to an unsatisfactory performance evaluation he received after the suspension and by upholding the 20-day suspension. Finally, he argues the trial court improperly awarded costs to the County. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Bruno is the chief investigator for the County's Public Defender's Office. On December 5, 2016, Guadalupe Zapien-Aguilera, his subordinate, filed a harassment complaint with the County against Bruno. In it, she alleged continuous discrimination beginning on January 11, 2016, based on her age, gender, medical condition, disability, political affiliation, race, and sex.

Based on this complaint, the County's Equal Employment Opportunity Office commenced an investigation. It found two of Zapien-Aguilera's allegations substantiated, including one allegation wherein "Zapien-Aguilera stated that [Bruno] engaged in gender-related comments and conduct, including touching. The allegation was substantiated because [Bruno] did not deny multiple claims of gender-related comments, admitted to the investigator that it was not unusual for [him] to comment about the attractiveness of women and admitted that it was possible . . . [he] leaned in closely to a staff member's chest to look at her t-shirt. In addition . . . , the investigation supported that [Bruno] more frequently touched women on the shoulder than men."

2

On April 3, 2017, the County notified Bruno of its intent to suspend him for 20 days for violating the County's policy and Rule 18. As support for this suspension, the County pointed to the substantiated allegations of Zapien-Aguilera's complaint, as well as the conduct underlying the complaints from two other female employees. The County later issued an order of discipline suspending Bruno for 20 days. On May 12, 2017, Bruno appealed the 20-day suspension and a hearing was held by the Office of Administrative Hearings.

A month later, the County gave Bruno an unsatisfactory performance evaluation based on the "allegations from staff under the supervision of Chief Investigator Christopher Bruno relating to his unprofessional and inappropriate conduct in the workplace." Bruno thereafter attempted to initiate the grievance process regarding his unsatisfactory performance evaluation. It does not appear Bruno requested arbitration of his grievance regarding the performance evaluation; however, Bruno attempted to elicit evidence regarding the performance evaluation at the administrative hearing. The administrative law judge excluded the evidence, finding it irrelevant because the subsequent performance evaluation had no bearing on the County's decision to suspend Bruno. Bruno said the performance evaluation was a "sanction[] that we're disputing here in front of this tribunal," but made no argument in that regard.

The administrative law judge presiding over Bruno's appeal issued several findings the parties do not dispute. The administrative law judge found Bruno "described Shannon Gonzales to Ms. Zapien-Aguilera as a 'looker' and stated 'she's great to look at.'" Zapien-Aguilera was offended by the comment. Bruno admitted he described "Ms. Gonzales as 'cute,' and did not deny also describing her as a looker.' . . . Additionally, his attempt to justify his comment by explaining he 'had a very good relationship with [Zapien-Aguilera] over many, many years' and Ms. Zapien-Aguilera 'didn't seem the slightest bit offended . . . by what I had said' was compelling evidence that he knew he engaged in improper behavior."

3

Bruno also "made demeaning and offensive comments when he told Ms. Zapien-Aguilera 'good' girl on multiple occasions. She complained he told her 'good girl, good job' after she completed an assignment he had given her. . . . And while Ms. Zapien-Aguilera repeatedly changed her testimony at [the] hearing about whether [Bruno] told her 'good job,' she consistently maintained that he repeatedly told her 'good girl.' She found his 'good girl' comments 'offensive and demeaning.' [Bruno] did not deny making such comments, instead conceding the possibility that he 'may have' said 'good girl, good job' in an effort to provide Ms. Zapien-Aguilera encouragement. He explained, 'I guess I could've said "Good Lupe," or, "Good person." It doesn't exactly roll off the tongue.' "

Bruno further "rubbed the back of Ms. Zapien-Aguilera's shoulder in an unwelcome manner on multiple occasions. . . . While her testimony about the timing of the conduct was inconsistent, such inconsistency was insufficient to detract from the substance of her allegations. Additionally, Ms. Gonzales saw [Bruno] 'stroking' Ms. Zapien-Aguilera's shoulder on approximately three or four occasions. Ms. Zapien-Aguilera 'didn't appreciate' [Bruno] touching her, and Ms. Gonzales described Ms. Zapien-Aguilera's reaction when he did as being 'like a deer in the headlights.' While [Bruno] vehemently denied rubbing anyone's back or shoulder, such testimony was not credible in light of his attempt to justify his conduct by explaining he had a sufficiently close relationship with Ms. Zapien-Aguilera that it was acceptable for him to touch her in an unwelcome manner."

"It was undisputed that Ms. Zapien-Aguilera never complained to [Bruno] about his 'good girl' comments . . . or rubbing of the back of her shoulders. But given his position as a supervisor for the County, the training he received as a County employee and supervisor, the County's reasonable expectations that he will enforce its policies, and the nature of his conduct, he had sufficient notice that his conduct could [have] 'unreasonably interfere[d] with an employee's work performance or create[d] an

4

intimidating, hostile, or offensive work environment' such that prior warnings were unnecessary."

The administrative law judge also made several legal findings. It found "[t]he County established by a preponderance of the evidence that [Bruno] engaged in gender-related comments and conduct by describing Shannon Gonzales to Ms. Zapien-Aguilera as a 'looker' and explaining 'she's great to look at,' repeatedly telling Ms. Zapien-Aguilera 'good girl' after completing work assignments, and rubbing Ms. Zapien-Aguilera on the back of her shoulder in an unwelcomed manner on multiple occasions . . . . His actions violated the County's [policy] and constituted 'conduct unbecoming an employee in public service.' "

"The persuasive evidence established [Bruno] is unfamiliar with and/or unwilling to comply with the County's [policy]. His harassment included multiple acts of physical and verbal harassment. He demonstrated little insight into why his conduct constituted harassment, and referenced his 'very good relationship with [Zapien-Aguilera] over many, many years' as justification for his harassment. He has not modeled appropriate behavior for his subordinates and other employees, and his conduct raises concerns about his ability and willingness to enforce County policies as a supervisor. Therefore, a 20-day suspension is appropriate for [Bruno]'s violations."

Bruno filed a verified petition for writ of administrative mandamus in the superior court arguing the administrative law judge erred in multiple respects. The superior court found the administrative law judge properly "found 'just cause' to uphold . . . Bruno's . . . 20[-]day disciplinary suspension. The [administrative law judge's] determination that Mr. Bruno violated the County's policy prohibiting sexual harassment and Rule 18's conduct unbecoming of a public employee is well supported by substantial evidence. The [administrative law judge] properly found that Guadalupe Zapien-Aguilera's internal complaint of sexually harassing conduct was not time-barred by Civil Service Rule 20's 60-day limitation. . . . The purported unconstitutional vagueness of Rule 18's 'conduct

5

unbecoming an employee in public service' was not adjudicated in the underlying arbitration hearing, which focused on whether Mr. Bruno's 20-day suspension was based on 'just cause'; thus, Mr. Bruno is precluded from raising that issue in this Petition. . . . The evidence supports the [administrative law judge's] finding that Mr. Bruno's offensive touching and comments to Ms. Zapien-Aguilera violated the County's Policy prohibiting sexual harassment and Rule 18's 'conduct unbecoming of a public employee'. Mr. Bruno's 20-day suspension is appropriate in severity and consistent with the County's practice as shown by the evidence. Mr. Bruno failed to bring an underlying grievance to rescind or modify his work performance evaluations and that claim was not adjudged in the disciplinary appeal arbitration; hence, Mr. Bruno is precluded from raising that issue in this Petition. In sum, Mr. Bruno's arguments are without merit and the [Superior] Court denied Mr. Bruno's Petition for Writ of Mandamus."

Judgment was entered in favor of the County. The superior court also awarded the County costs. Bruno appeals.

## DISCUSSION

Under Code of Civil Procedure section 1094.5 an "abuse of discretion is established if the [administrative law judge] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by substantial evidence in light of the whole record." (*Martis Camp Community Association v. County of Placer* (2020) 53 Cal.App.5th 569, 593.) "The scope of our review from a judgment on a petition for writ of mandate is the same as that of the trial court." (*Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270, 282.)

### I

### *Zapien-Aguilera's Allegations Were Not Time-Barred*

Bruno contends Civil Service Rule 20 (Rule 20) restricted the County's ability to rely on allegations of harassment reported outside the reporting deadlines provided by that rule. He further argues he was entitled to the process proscribed by Rule 20 and that

6

the County violated its own policies by not disciplining him through the process provided by Rule 20.  Taken together, Bruno's argument is that Rule 20 applied to his disciplinary action.  We disagree.  Rule 20 does not provide for a process by which the County disciplines employees, but provides for a process by which employees may complain about harassment to the County.  Thus, Rule 20 is irrelevant to Bruno's disciplinary action.

A

*The County's Reporting Requirements*

The County's policy "encourage[s]" employees who believe themselves to be victims of harassment to "immediately report the complaint to the appropriate supervisor, manager, Department Equal Employment Opportunity (EEO) Coordinator, department head, or to the County EEO Office.  A violation of this policy will receive prompt and appropriate actions.  [¶]  Complaints of harassment from employees shall be processed in accordance with Civil Service Rule 20."

Rule 20 provides for an informal and formal complaint process for individuals who believe they have been victims of discrimination.  "The intent of the informal complaint process is to provide for early intervention and resolution of discrimination complaints in an informal manner or through a mediation process at the department level.  [¶]  Prior to the filing of a formal complaint, an employee alleging discrimination in violation of this Rule shall report the discrimination to the Department [Equal Employment Opportunity] Coordinator (Coordinator).  Complaints must be reported within sixty (60) days of the date the alleged discrimination occurred."  "If a discrimination complaint is not resolved through the informal complaint process, or if the Complainant is not satisfied with the results of the informal complaint process, the Complainant may file a formal written complaint . . . ."

"If, at the conclusion of the formal complaint process . . . , the [Equal Employment Opportunity] Office concludes (1) that the allegation of discrimination under this Rule

7

has not been substantiated, or (2) concludes that a violation has been substantiated; however, the Appointing Authority disagrees with that conclusion and indicates that he or she will not take any or all remedial or restorative action, a Complainant shall have the right to submit a written request for an appeal before the Civil Service Commission (Commission) . . . ."

"If the decision of the Commission is that the alleged act(s) constitute discrimination under this Rule, the Commission shall issue an order requiring the person who has committed the discrimination to cease and desist from such action in the future. Failure to cease and desist may constitute grounds for disciplinary action under Civil Service Rule 18. The Commission may also order appropriate remedial or restorative action(s) . . . . The Appointing Authority shall have ten (10) days from receipt of the Commission's decision to implement said appropriate remedial or restorative action(s)."

B

*Rule 20 Does Not Apply To Disciplinary Actions*

Bruno's entire argument rests on the assumption Rule 20 applies to his disciplinary action, but as the County's policy explains Rule 20 provides a process for addressing "[c]omplaints of harassment from employees." Rule 20 itself outlines a procedure where the employee complaining of harassment gets his or her concerns redressed. The employee complaining of harassment holds the right of appeal under Rule 20, not the harassing employee. Because Rule 20 applies only to an employee complaining of harassment, Rule 20 is irrelevant to Bruno's disciplinary action.

To the extent the County, or one of its departmental entities, can discipline an employee based on a complaint of harassment, the County's policy "encourage[s]" employees who believe themselves to be victims of harassment to "immediately report the complaint to the appropriate supervisor, manager, Department Equal Employment Opportunity (EEO) Coordinator, department head, or to the County EEO Office. A

8

violation of this policy will receive prompt and appropriate actions." The policy does not require complaints of harassment be reported within a certain time; it promises only that the County will act upon a report of harassment promptly. Accordingly, Zapien-Aguilera's complaints of harassment were not time-barred.

## II

### *The Factual Findings Constitute Violations Of The County's Policy*

Bruno contends the administrative law judge's factual findings do not support a violation of the County's policy. He is correct that he is entitled to an independent review of this claim. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385 [generally, mixed questions of fact and law are reviewed de novo with some exceptions, such as when the applicable legal standard provides for a strictly factual test].) We, however, disagree that the administrative law judge's factual findings fail to support a violation of the County's policy.[1]

### A

### *The County's Policy*

The County is "committed to maintaining an environment that is free from harassment because of an employee's age, ancestry, color, creed, marital status, medical condition (cancer or genetic characteristics), national origin, physical or mental disability, political affiliation or belief, pregnancy, race, religion, sex or sexual orientation." The County's policy "defines harassment as behavior that intimidates, threatens, degrades, torments, or places demands upon another, based upon one or more of the protected categories . . . to the extent that the conduct unreasonably interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment." Example of harassment include, "[v]erbal conduct, such as ethnic or racial slurs, epithets,

---

[1] Because we independently review Bruno's claim, we need not address whether the superior court used the correct standard.

9

derogatory or insulting comments, taunting, heckling, unwanted sexual advances or comments, racial or sexual jokes; [¶] [p]hysical conduct, such as impeding or blocking movement, gestures, unwelcome touching."

The County's policy further provides that "[i]n general sexual harassment is defined as any unwanted sexual advance, request for sexual favors, and unwelcome verbal or physical conduct of a sexual nature.  [¶]  The actions [constituting harassment] will be considered sexual harassment when:  [¶]  1) Submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment; or [¶] 2) Submission to, or rejection of, such conduct by an individual is used as the basis for employment decisions affecting that individual; or [¶] 3) Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

B

*Bruno's Conduct Violated The County's Policy*

The administrative law judge found Bruno had commented about the attractiveness of a female employee to Zapien-Aguilera, a subordinate, as well as call Zapien-Aguilera a "good girl" and rub her shoulders in an offensive manner on multiple occasions.  Zapien-Aguilera was offended by Bruno's comments and demeaning treatment of her.  Bruno argues these findings were insufficient because the administrative law judge never found his conduct was sexual in nature and done for the purpose of affecting the conditions of Zapien-Aguilera's employment or unreasonably interfering with her work performance.

The problem with Bruno's argument is that he points only to the County's definition of sexual harassment when arguing he did not violate the County's policy.  The County's policy, however, also prohibits harassment on the basis of sex.  This includes "behavior that intimidates, threatens, degrades, torments, or places demands upon another, based upon one or more of the protected categories . . . to the extent that the

10

conduct unreasonably interferes with an employee's work performance or creates an intimidating, hostile, or offensive work environment."

The administrative law judge's findings that Bruno's degrading comments and touching were based on sex and that it resulted in Zapien-Aguilera being subjected to an offensive work environment support the administrative law judge's determination that Bruno's conduct violated the County's policy against such conduct. Accordingly, we reject Bruno's contention to the contrary.

III

*Rule 18 Is Not Unconstitutionally Vague*

Bruno contends Rule 18, prohibiting conduct unbecoming an employee in public service, is unconstitutionally vague. He argues this claim is not forfeited despite his failure to argue it at the administrative hearing because the administrative law judge cited a case wherein that court concluded a rule similar to Rule 18 was not unconstitutionally vague. We are unpersuaded, but will address Bruno's claim regardless. (See *Sustainability, Parks, Recycling & Wildlife Defense Fund v. Department of Resources Recycling & Recovery* (2019) 34 Cal.App.5th 676, 697 [a party must raise legal theories to the administrative law judge's attention, but courts have discretion to address those theories on appeal].)

Rule 18 provides that an employee may be dismissed, suspended, demoted, or receive a reduction in salary when he or she has committed conduct unbecoming an employee in the public service. "The employee, within seven (7) calendar days after the order is furnished to the employee, may appeal the order in writing" to either the Commission or for arbitration.

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " (*Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 763.) In *Cranston*, a police officer was warned about

his driving habits and that his conduct was being observed. Nonetheless, he drove his car without lights at night and led fellow police officers on "a wild chase over wet and slippery streets at speeds up to 95 miles per hour." (*Id*. at p. 759.) The police officer was discharged for " 'conduct unbecoming an employee of the City Service.' " (*Ibid*.)

Our Supreme Court stated two principles in *Cranston*. First, challenges to statutes as vague must be examined not in the abstract, but in light of the facts of the case. Second, a plaintiff cannot complain that a statute is vague if the conduct with which he or she is charged falls clearly within its bounds. (*Cranston v. City of Richmond*, *supra*, 40 Cal.3d at pp. 764-765.) Thus, in judging the constitutionality of the "conduct unbecoming" rule, the court "must determine not whether the rule is vague in the abstract but, rather, whether it is vague as applied to this appellant's conduct in light of the specific facts of this particular case." (*Id*. at p. 765.)

Interpreting the conduct unbecoming statute as specific to the plaintiff's profession, our Supreme Court construed it to read " 'conduct unbecoming a city police officer' " and to refer only to conduct indicating a lack of fitness to perform a police officer's functions. So construed, the regulation provided a specific standard for judging a police officer's conduct. (*Cranston v. City of Richmond*, *supra*, 40 Cal.3d at p. 769.) Measured against this standard, the police officer's conduct (1) was reckless; (2) violated laws which he was employed to enforce; (3) endangered the lives of himself, his passenger, and of pursuing police officers; and (4) showed carelessness, poor judgment, and blatant disregard of the law and of a peace officer's responsibilities. Thus, our Supreme Court concluded any reasonable police officer must know this conduct, whether described in a rule or not, would be cause for discipline or dismissal from employment. (*Id*. at p. 770.)

Under the reasoning of *Cranston*, we may read Rule 18 as prohibiting conduct unbecoming a supervising County employee and referring to conduct indicating a lack of fitness to perform a supervising employee's functions. Measured against this standard,

12

Bruno's conduct was (1) demeaning and patronizing of a subordinate employee; (2) interfered with her ability to effectively complete her job; (3) violated the County's policy against harassment and discrimination; and (4) undermined public trust in the County's fairness in employment. Any supervisor must know this conduct, whether described in a rule or not, would be cause for discipline or dismissal from employment. (See *Cranston v. City of Richmond*, *supra*, 40 Cal.3d at p. 770.) Rule 18 is not unconstitutionally vague.

IV

*Bruno Did Not Challenge The*

*County's Unsatisfactory Performance Evaluation*

Although Bruno contends the administrative law judge abused his discretion by excluding Bruno's unsatisfactory performance evaluation, he does not appear to argue the administrative law judge should have considered the performance evaluation when making his decision. Instead, Bruno argues the administrative law judge should have permitted Bruno to challenge the validity of the performance evaluation as well as his 20-day suspension. We disagree.

Bruno's notice of appeal to the County requesting arbitration provided he was appealing only his 20-day suspension. This is understandable since the unsatisfactory performance evaluation did not occur until after Bruno requested arbitration of his suspension. Bruno alleges he attempted to work through the grievance process but the County stonewalled him and made the process impossible. Because he believed the grievance process futile, he attempted to "incorporate his evaluation grievance into the arbitration of his already administratively exhausted 20-day suspension . . . ."

Even if this were true, however, Bruno never argued it to the administrative law judge. Contrary to Bruno's assertions, he never requested the administrative law judge rule on the propriety of his unsatisfactory performance evaluation. While Bruno asserted to the administrative law judge that the unsatisfactory performance evaluation was a

13

"sanction[] that we're disputing here in front of this tribunal," Bruno did not present the administrative law judge with the reasons he presents here as to why his unsatisfactory performance evaluation should be incorporated into the suspension appeal. Instead, the thrust of Bruno's argument was that the subsequent unsatisfactory performance evaluation should not be excluded on relevance grounds. Bruno does not dispute on appeal the administrative law judge's exclusion on these grounds.

As to Bruno's claim his unsatisfactory performance evaluation should be incorporated into his challenge to the suspension, Bruno has forfeited that argument by failing to raise it before the administrative law judge. We do not have discretion to review this claim because Bruno's forfeiture resulted in a failure to exhaust his administrative remedies as to the unsatisfactory performance evaluation. "The exhaustion of administrative remedies doctrine 'bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all; it also operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to "exhaust" the remedy available to them in the course of the proceeding itself.' . . . The rule is a jurisdictional prerequisite in the sense that it 'is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts.' " (*Citizen for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 874.)

V

*The Administrative Law Judge Did Not Abuse His*

*Discretion By Upholding Bruno's 20-Day Suspension*

Bruno contends the administrative law judge abused his discretion by upholding the 20-day suspension. Indeed, Bruno thinks the punishment is excessive in light of the

14

lack of past disciplinary action, a finding of harm to the public, or notice his conduct violated the County's policy or Rule 18. He further argues the administrative law judge should not have upheld the suspension in light of the County's inability to substantiate multiple allegations against him. We disagree.

## A

### *Background*

Kathy Harris is the County's deputy director of human resources. She testified at the administrative hearing that when determining the level of discipline appropriate for Bruno, she thought "about prior Rule 20 investigations where we had similar findings of a violation of a policy and the level of discipline that was imposed in those particular cases. And we shared that it was 20 days for consistency. The recommendation was 20 days at a minimum." The County issued at least two other 20-day suspensions to other employees in management in the last four years. To Harris's knowledge, neither of those employees had experienced prior disciplinary action. But both employees were managers who reported to department heads and were each the subject of a single complaint of discrimination. "The 20 days was arrived at [based on] a leadership expectation of high-level management positions, that they are to lead and provide guidance and direction in this policy area regarding conduct. And if they're behavior does not mirror what they are expected to have staff follow, that's where the 20-day suspension came in."

## B

### *The 20-Day Suspension Was Appropriate*

Whether a sanction imposed by an administrative agency was proper is a matter resting in the sound discretion of that agency, and its decision will not be overturned absent a showing of an abuse of discretion. (*Hanna v. Dental Board of California* (2012) 212 Cal.App.4th 759, 764.) In reviewing an issue regarding the propriety of administrative discipline imposed, the appellate court employs the same "abuse of discretion" standard as the trial court. (*County of Los Angeles v. Civil Service Com. of*

15

*County of Los Angeles* (2019) 40 Cal.App.5th 871, 878; *Hanna*, at p. 764 [an appellate court will not disturb an administrative agency's exercise of discretion regarding discipline absent a showing of a manifest abuse of discretion]; Code Civ. Proc., § 1094.5, subd. (b).) Like the trial court, we afford significant deference to an administrative agency's expertise regarding the propriety of punishment to impose and do not substitute our discretion for the agency's. (*Hanna*, at p. 764.) The law affords a "strong presumption of correctness concerning the administrative findings," and the appellant bears the burden to demonstrate that the findings with which he takes issue are against the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

Bruno contends Harris did not sufficiently testify to the facts of the two cases she relied on when disciplining Bruno for the administrative law judge to conduct a meaningful comparison to determine whether Bruno's discipline was consistent. Not so. Harris testified the cases she relied upon in reaching her recommendation involved employees in similar positions to Bruno, in that they all reported to a department head, and were disciplined for the same violation, discrimination based on a protected class. The other employees had a single allegation of discrimination against them and no prior record of disciplinary action. In both instances, the employees received 20-day suspensions. This provides for a meaningful comparison of the consistency of the County's disciplinary action in matters such as this.

Bruno argues that when comparing his suspension to the two other suspensions, his 20-day suspension was excessive because it failed to account for the fact that most of the allegations against him were unsubstantiated, he had experienced no prior discipline, his conduct did not harm the public, and he had no notice his conduct was offensive. Again, we disagree.

While most of the allegations against Bruno may have been unsubstantiated by the administrative law judge, some allegations were substantiated. This puts him on even footing with the two other employees who received a 20-day suspension for a single

16

instance of violating the County's policy. Similarly, the other two employees had no record of discipline, nor is there evidence those other employees' conduct harmed the public. While Bruno argues he had no notice his conduct was offensive, notice was not a consideration when determining the appropriate level of discipline. Indeed, Harris testified the 20-day suspension was appropriate because management employees "are to lead and provide guidance and direction in this policy area regarding conduct. And if they're behavior does not mirror what they are expected to have staff follow, that's where the 20-day suspension came in."

The administrative law judge agreed with this assessment noting that, "given [Bruno's] position as a supervisor for the County, the training he received as a County employee and supervisor, the County's reasonable expectations that he will enforce its policies, and the nature of his conduct, he had sufficient notice that his conduct could [have] 'unreasonably interfere[d] with an employee's work performance or create[d] an intimidating, hostile, or offensive work environment' such that prior warnings were unnecessary." Further, Bruno "has not modeled appropriate behavior for his subordinates and other employees, and his conduct raises concerns about his ability and willingness to enforce County policies as a supervisor."

Given the similarity between Bruno's discipline and the discipline of other management-level employees for the same violations, we cannot say the administrative law judge abused his discretion by upholding Bruno's 20-day suspension.

VI

*The Superior Court's Cost Award Will Remain Unchanged*

Bruno contends the superior court's cost award to the County should be reversed because it is premised upon the County prevailing in the superior court. Bruno argues he should have prevailed because the count relied on allegations made outside the reporting period provided by Rule 20. But, as discussed *ante*, Rule 20 does not provide a procedure for disciplining employees, it provides a procedure for employees to voice

17

allegations of harassment to the County.  The County's policy, on the other hand, does not provide any time frame for reporting harassment for the purposes of disciplining an employee, and promises only that the County will promptly act in the face of such allegations.  Thus, because the superior court properly determined the County prevailed in this writ proceeding, it properly awarded costs.  (See Code of Civ. Proc., § 1094.5, subd. (a).)

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(5).)

/s/
Robie, J.

We concur:

/s/
Blease, Acting P.J.

/s/
Murray, J.